IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPRINT SPECTRUM, L.P., | : | CIVIL ACTION |
| d/b/a/ SPRINT PCS, | : | |
| | : | |
| Plaintiff, | : | NO. 06-215 |
| | : | |
| v. | : | |
| | : | |
| ZONING HEARING BOARD OF THE | : | |
| TOWNSHIP OF HAVERFORD, | : | |
| DELAWARE COUNTY, PA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Giles, J.                                                                                April 9, 2007

**I.  Introduction**

Before the court are cross-motions for summary judgment by Defendant Zoning Hearing Board of the Township of Haverford, Delaware County, PA (the "Board"), and Plaintiff Sprint Spectrum, L.P. ("Sprint").  The issues raised by the motions and determined by the court are: (1) whether the Board's denial of Sprint's application to construct a cell phone tower atop a church steeple was supported by substantial evidence in the written record as required by the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7)(B); (2) whether the denial had the effect of prohibiting the provision of personal wireless services in violation of the TCA; and (3) whether the Board's decision was arbitrary and capricious.

The court concludes that the Board's decision was supported by substantial evidence, did not have the effect of prohibiting the provision of personal wireless services, and was not arbitrary and capricious.  Accordingly, the court grants the Board's Motion for Summary Judgment and denies Sprint's Motion for Summary Judgment for the reasons that follow.

## II.  Factual Background

**A.     General Background**

Sprint, which does business as Sprint PSC, provides personal communications services to the general public pursuant to licenses granted by the Federal Communications Commission. Sprint filed an application with the Board for permission to install a wireless communications facility ("facility"), or cell phone tower, atop the existing steeple of the Temple Lutheran Church (the "Church") in Haverford Township, Pennsylvania, to fill what Sprint asserted was a significant gap in Sprint's communications services in the area.  Sprint had already entered into a lease agreement with the Church to place the cell phone tower on the steeple.[1]

Sprint proposed to install a twelve-foot high communications antenna pole on top of the Church steeple.  The steeple is fifty-nine feet high.  The total resulting height of the structure would be seventy-one feet above ground level.  (Pl. Mot. for Summ. J., Ex. A-2.)  The proposed antenna pole would be six inches in diameter and contain three antennas.  (Bd. Decision & Order ¶ 15.)  The two existing bullhorn speakers located at the top of the Church parapet would be mounted on the antenna pole at sixty-one feet above ground level.  (Id.)  Cables would run along one side of the steeple and utility cabinets and equipment cabinets would be installed inside the Church.

Sprint sought a "special exception" from the Board pursuant to Sections 182-

---

[1]  The Church has since expressed to Sprint that it no longer seeks to continue its relationship with Sprint, citing concerns that the communications facility is not compatible with the Church's mission to serve the local community.  (Def. Mot. for Summ. J., Exs. 2 & 3.)  The apparent change of heart by the Church plays no part in the court's decision.

602.B(3)(b),[2] 182-728,[3] 182-1002.C,[4] and 182-1004[5] of the Zoning Ordinance of the Township of

---

[2]  Section 182-602.B(3)(b) provides:
B(3). Uses by special exception. The following additional uses, whether as a primary or accessory use when authorized by the Zoning Hearing Board as a special exception; . . . (b) Telecommunications equipment of a licensed carrier providing telecommunications service provided that the Zoning Hearing Board finds that the provisions of Section 182-728 have been met.

[3]  Section 182-728 provides in part:
E. An antenna which is proposed to be mounted on an existing building, structure or telecommunications tower or pole shall be required to meet the standards provided in Section 182-210.B(3)(b) of this chapter.

The above-referenced Section 182-210.B(3)(b)[3] provides:
The existing structure must comply with all area and bulk regulations of the district in which the building is located, including any supplemental provisions for buffering.

[4]  Section 182-1002.C provides:
C. Special Exception. The Board shall hear and decide requests for special exceptions where this chapter states that a special exception may be granted or denied by the Board in accordance with express standards and criteria contained in this chapter.

[5]  Section 182-1004 provides:
(A) In any instance where the Zoning Hearing Board is required to consider a special exception or variance in the Zoning Ordinance or Zoning Map in accordance with the provisions of this chapter, the Board shall, among other things, consider the following standards:
    (1) Variances.
        (a) that there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in a neighborhood or district in which the property is located.
        (b) that because of such physical circumstances or conditions there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
        (c) that such unnecessary hardship has not been created by the appellant.

3

(d) that the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located nor substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(e) that the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(2) Special Exceptions

(a) that the suitability of the property for the use desired. The Board shall assure itself that the proposed request is consistent with the spirit, purpose and intent of the Zoning Ordinance.

(b) that the proposed special exception will not substantially injure or detract from the use of neighboring property or from the character of the neighborhood and that the use of property adjacent to the area included in the proposed change or plan is adequately safeguarded.

(c) that the proposed special exception will serve the best interest of the Township, the convenience of the community and the public welfare.

(d) the effect of the proposed special exception upon the logical, efficient and economical extension of public services and facilities, such as public water, sewers, police and fire protection and public schools.

(e) the imposition of such conditions, in addition to those required, as are necessary to assure that the intent of the Zoning Ordinance is complied with, which conditions may include but are not limited to harmonious design building; planting and its maintenance as a site or sound screen; the minimizing of noxious, offensive or hazardous elements; adequate standards of parking; and sanitation.

(f) that the unique circumstances for which the special exception is sought were neither created by the owner of the property nor were due to or the result conditions in the zoning district in which the property is located.

(g) the suitability of the proposed location of an industrial or commercial use with respect to probable effects upon highway traffic and that adequate access arrangements in order to protect major streets and highways from undue congestion and hazard are assured.

(h) the adequacy of sanitation and public provisions, where applicable, and require a certificate of adequacy of sewage and water facilities from the appropriate governmental agency in such case required herein or deemed advisable.

(i) that financial hardship shall not be construed as the basis for granting special exceptions.

B. In granting any variance or special exception, the Board may attach such

4

Haverford ("Ordinance") to allow installation of the facility on the steeple.  The Church was built

before the enactment of the Ordinance and does not meet its area and bulk requirements.  Sprint

therefore also sought a "variance" from Sections 182-210.B(3)(b),[6] 182-602.C,[7] and 182-728.E[8]

reasonable conditions and safeguards, in addition to those expressed in this
chapter, as it may deem necessary to implement the purposes of the Planning
Code and Zoning Ordinance, which conditions and safeguards may relate to but
are not limited to the harmonious design of buildings, planting and its
maintenance as a sight or sound screen, lighting, noise, safety and the minimizing
of noxious, offensive or hazardous elements.
C. In a case of a request for a special exception or variance, it shall be the
responsibility of the applicant to present such evidence as is necessary to
demonstrate that the proposed use or modification complies with the
pertinent criteria and standard set forth in this section.

[6]  Section 182-210.B(3)(b) provides in part:
(3) . . . Uses by special exception. The following uses shall be permitted when
authorized by the Zoning Hearing Board as a special exception. . .
    (b) Telecommunications equipment of a licensed carrier providing
    telecommunications service provided that the Zoning Hearing Board shall find
    that the following standards have been met:
        [1] The equipment may include a roof-mounted antenna to an existing
        structure with a maximum height of 20 feet above the roofline of the
        building or structure. . . .
        [3] The existing structure must comply with all area and bulk regulations
        of the district in which the building is located, including any supplemental
        provisions.

[7]  Section 182-602.C provides that the following area and bulk regulations must be
observed:
    (1) Lot size: two acres minimum.
    (2) Street frontage: 150 feet minimum.
    (3) Building coverage: 20% maximum.
    (4) Front yard: 100 feet minimum.
    (5) Side yards: 50 feet minimum each.
    (6) Rear yard: 75 feet minimum.
    (7) Height: 35 feet maximum or three stories; provided, however, that the height
    of a building may be increased to a maximum height of a building may be
    increased to a maximum height of 60 feet or five stories by providing two feet of
    additional front, rear and side yard setbacks for each one additional foot of height

5

pursuant to Sections 182-1002.B[9] and 182-1004[10] to allow the continuation of the existing

nonconforming conditions with the proposed change in the overall height of the Church steeple.

The Board held public hearings on Sprint's application on September 15, 2005,

November 17, 2005, and December 1, 2005.  At the hearings, Sprint presented expert testimony

and documentary evidence.  Several residents testified in opposition to Sprint's application.  On

December 15, 2005, the Board issued an oral order denying Sprint's application.  On April 20,

2006, the Board issued a written decision and order reporting the bases for denial of the

application.


**B.      The Board's Decision and Order**

In its decision and order, the Board made certain findings of fact, which now will be set

forth.  Sprint's expert, Neil Nocete (sic), a radiofrequency engineer, testified that there was a gap

in communications coverage in the area surrounding the Church and that a person could not

make or receive a wireless communications call in this area.  (Bd. Decision & Order ¶ 27 & Ex.

A-7 (Map of Predicted Coverage without Proposed Site).)  Nocete testified that the proposed

---

of the building above 35 feet.
(8) Impervious surface ratio: 40% maximum.

[8]  See supra, note 3.

[9]  Section 182-1002.B provides:
B. Variances. The Board shall hear requests for variances where it is alleged that
the provisions of this chapter inflict unnecessary hardship upon the applicant,
subject to the standards prescribed by law and contained in Section 182-1004.A.

[10]  See supra, note 5.

6

facility would partially fill the gap (id. at ¶ 29 & Ex. A-8 (Map of Predicted Coverage with Proposed Site)), but that, even if the facility were constructed, many uncovered areas would remain and it would still be necessary to construct a second facility elsewhere to fill the gap (id. at ¶¶ 41, 57-58, 62).

Sprint's expert, William Welber, a property specialist, testified that the Church was the only existing structure that was considered as a potential site.  (Id. at ¶ 32.)  Welber and Nocete testified that Sprint considered and rejected several raw land candidates because Sprint did not believe these sites could fill the gap in coverage.  (Id. at ¶¶ 33-38.)  One rejected site would require the construction of a 150-foot tower and another a 300-foot tower, due in part to a lower-lying elevation.  (Id. at ¶¶ 33, 38.)

In reference to the November 17, 2005 hearing, the Board noted Sprint did not present calculations to show why at least one proposed site, called the Haverford Baseball Fields, was not acceptable.  (Id. at ¶ 39.)  The Board also noted that Sprint did not consider a site called Grange Field despite its apparent close proximity and correct elevation.  (Id. at ¶ 40.)

At the December 1, 2005 hearing, Nocete returned to testify regarding alternative sites. (Id. at ¶ 50.)  Nocete testified that the construction of a 250-foot tower on the landscape property at a site called Karakung Drive could fill the gap in coverage and provide the same coverage as the proposed site, although it would still miss some coverage south of the proposed site.  (Id. at ¶¶ 51-52.)  Nocete also testified that the construction of a 170-foot tower on the Grange Field site would fill the coverage gap and provide better coverage than the proposed Church site, covering areas that would be uncovered by the Church site.  (Id. at ¶¶ 54-55, 57, 60-61 & Ex. A-18 (Map of Predicted Coverage of Grange Field).)  Nocete testified that he did not know the height a

7

tower at Grange Field would have to be to equal coverage at the proposed Church site.  (Id. at ¶¶ 56, 63.)

Three residents who lived near the Church voiced opposition to the facility at the hearings.  (Id. at ¶¶ 45-47, 59.)  Two residents testified that they had full service on their Sprint PCS cell phones in the area.  (Id. at ¶¶ 46-47.)  The third resident opposed the tower because he felt there were alternatives located in non-residential areas that would provide more coverage than the proposed site, and he objected to the aesthetics of the proposed facility.  (Id. at ¶ 59; Pl. Mot. for Summ. J. 5.)

In the discussion section of its decision, the Board wrote that Sprint failed to show that the property is subjected to an unnecessary hardship, as required for a variance, see §§ 182-1002.B, 182-1004.A(1).  It found that Sprint did not present testimony on the issue, there were, in fact, better signal coverage alternatives available to Sprint, and there was nothing unique about the Church site that made it the only site available to Sprint.  (Bd. Decision & Order 15.)  In denying the special exception, the Board concluded that the proposed site was not the most suitable property for the use desired, that even if that site were approved a second facility would still have to be constructed, and that better alternative sites were available, which would better serve the township and community.  (Id. at 15-16.)  The Board also noted that residents were opposed to the facility and were concerned about the aesthetics of the facility and about Sprint's decision to place a cell tower on a church in a residential neighborhood rather than in a less-populated area.  (Id. at 16.)

The Board then presented the following four conclusions:

1.    Applicant in this matter bore the burden of establishing all necessary

elements of the requested relief, including that the property is affected by an unnecessary hardship that has been created by unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape or exceptional topographical or other physical conditions peculiar to his property.

2. Applicant has failed to establish, either through his testimony or the introduction of documentary evidence, that his property was burdened by any unnecessary hardship.

3. Applicant has, therefore, failed to sustain his burden of establishing all of the necessary elements required for the Board to grant a variance in accordance with Section 182-1004 of the [Ordinance].

4. Applicant fails to meet the express standards and criteria set out in the [Ordinance] for the grant of a special exception, specifically, the existing structure fails to comply with the necessary area and bulk requirements, the property is not suitable for the use desired, the proposed special exception may substantially injure or detract from the use of the neighboring property or from the character of the neighborhood, and the proposed special exception does not serve the best interests of the township.

(Id. at 15-16.)

### III.  Procedural History

On January 17, 2006, Sprint filed a Complaint against the Board, charging that the Board's decision was not supported by substantial evidence and had the effect of prohibiting the provision of personal wireless service in violation of the TCA, 47 U.S.C. § 332(c)(7)(B), and that the Board's decision was arbitrary, capricious, unreasonable, and an abuse of discretion in violation of the zoning laws of the Commonwealth of Pennsylvania.  This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367(a) (supplemental jurisdiction), and venue is proper pursuant to 28 U.S.C. § 1391(b).  After the Board filed its Answer to the Complaint, the parties filed cross-motions for summary judgment in mid-February 2007.  Oral argument on the motions was held on March 21, 2007.

## IV.  Legal Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celetox Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23.  In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV.  Discussion

**A.      Applicable Law and Standard of Review**

**1.       The Telecommunications Act of 1996.**

The TCA governs federal, state, and local government oversight of the construction of personal wireless service facilities.  Sprint alleges that the Board violated the TCA because the Board's decision was not supported by substantial evidence, as required by 47 U.S.C. §

332(c)(7)(B)(iii), and has the effect of prohibiting the provision of personal wireless service, in

violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  Section 332(c)(7) provides in pertinent part as

follows:

> (A) General Authority
> Except as provided in this paragraph, nothing in this chapter shall limit or
> affect the authority of a State or local government or instrumentality thereof
> over decisions regarding the placement, construction, and modification of
> personal wireless service facility.
> (B) Limitations . . .
> (i) The regulation of the placement, construction, and modification of personal
> wireless service facilities by any State or local government or
> instrumentality thereof - . . .
> (II) shall not prohibit or have the effect of prohibiting the provision of
> personal wireless services.
> (iii) Any decision by a State or local government or instrumentality thereof
> to deny a request to place, construct, or modify personal wireless
> service facilities shall be in writing and supported by substantial
> evidence contained in the written record.
> 47 U.S.C. § 332(c)(7).

### 2.        Substantial Evidence Standard.

The TCA requires that denials be supported by substantial evidence.  47 U.S.C. §

332(c)(7)(B)(iii).  To determine whether a denial was supported by substantial evidence

under the TCA, courts employ "the traditional standard used for judicial review of agency

action."  H.R. Conf. No. 104-458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124,

223.  The standard of review is deferential.  Substantial evidence "does not mean a large

or considerable amount of evidence, but rather such evidence as a reasonable mind might

accept as adequate to support a conclusion."  Cellular Tel. Co. v. Zoning Bd. of

Adjustment of Ho-Ho-Kus, 197 F.3d 64, 71 (3d Cir. 1999) (quoting Pierce v.

Underwood, 487 U.S. 552, 565 (1988)) (quotations omitted); see Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999) (construing substantial evidence "to mean less than a preponderance, but more than a scintilla of evidence").

A court must "determine whether there is substantial evidence in the record as a whole to support the challenged decision.  It has no power either to weigh the evidence contained in the record or to substitute its own conclusions for those of the fact-finder." Ho-Ho-Kus, 197 F.3d at 71 (citations omitted).  Because the decision process is governed by state and local law, a court must determine whether the decision, as guided by local law, is supported by substantial evidence.  Id. at 72.

### 3.  Applicable Standard under the "Effect of Prohibiting" Clause.

The Third Circuit has held that the substantial evidence review under Section 332(c)(7)(B)(iii) does not apply to the inquiry of whether the denial of an application to build a personal wireless service facility "has the effect of prohibiting the provision of personal wireless service" under Section 332(c)(7)(B)(i)(II).  APT Pittsburgh Ltd. Partnership v. Penn Township, 196 F.3d 469, 475 (3d Cir. 1999).  It has determined that decisions in this arena are not to be made solely on the basis of the factual record and therefore should not be subjected to the deferential substantial evidence review.  Id. at 474-75.  Thus, the scope of "effect of prohibiting" review is de novo and "will not necessarily be limited to the record compiled by the state or local authority."  Id. at 475.

Accordingly, the court will apply the deferential substantial evidence standard of review to the question of whether the Board's denial of the variance and special exception

was supported by substantial evidence as required by the TCA.  In determining whether the Board's decision has the effect of prohibiting the provision of personal communications services in violation of the TCA, the court will apply a <u>de novo</u> standard of review.  The court will then examine whether the Board's decision was arbitrary and capricious.

**B.      The Board's Decision Was Supported by Substantial Evidence.**

Sprint argues that the Board's decision to deny Sprint the variance and special exception was not supported by substantial evidence as required by Section 332(c)(7)(B)(iii) of the TCA.

### 1.      The Denial of the Variance Was Supported by Substantial Evidence.

Because the Church was built before the enactment of the Ordinance and did not meet its area and bulk requirements under Sections 182-210.B(3)(b), 182-602.C, and 182-728.E, Sprint sought a "variance" from these requirements pursuant to Sections 182-1002.B and 182-1004 of the Ordinance to allow the continuation of the existing nonconforming conditions.  Under Sections 182-1002.B and 182-1004, the applicant must show that the property is subject to an unnecessary hardship created by unique physical circumstances or conditions of the property, and not by the applicant.  The Board found that Sprint failed to show an unnecessary hardship because Sprint did not present testimony on the issue, there were better alternatives available, and there was nothing unique about the Church site that made it the only site available to Sprint.

Sprint argues that the Board's conclusion as to unnecessary hardship was not supported by substantial evidence.  Sprint asserts that the facility on the Church is needed to fill a gap in Sprint's communications coverage and is an alternative to building a new, intrusive

13

communications tower.  It argues that the hardship is inherent in the property because of the impossibility of conforming the existing building to bulk and area requirements.

The court finds that the Board's conclusion that Sprint failed to show an unnecessary hardship was supported by substantial evidence.  The Board based its conclusion on testimony and documentary evidence produced by Sprint itself establishing that alternative sites, such as Grange Field, provided equal or superior coverage than the proposed facility.  Sprint did not submit evidence or testimony that alternative sites with equal or superior coverage were not available or feasible.  Nor did Sprint show that a suitable facility could only have been constructed on the Church and subject to the Church's existing nonconforming conditions.

Unquestionably, some hardship is inherent in the Church property due to its existing nonconforming conditions.  Sprint, however, did not present evidence that its choices were limited to that property.  Rather, the evidence presented showed that at least one alternative site existed that would provide better coverage than the Church steeple.  By limiting its consideration of sites to the Church with its existing nonconforming conditions, and without adequately exploring alternative sites, Sprint created for itself an unnecessary hardship, which is prohibited by the Ordinance.  Viewing the record as a whole, the court concludes that the Board based its decision to deny the variance on evidence that a reasonable mind might accept as adequate to support that conclusion.  See Ho-Ho-Kus, 197 F.3d at 71.

### 2.	The Denial of the Special Exception Was Supported by Substantial Evidence.

Sprint applied for a "special exception" pursuant to Sections 182-602.B(3)(b), 182-728, 182-1002.C, and 182-1004 of the Ordinance.  Sections 182-2004.A(2) and 182-2004.C of the

Ordinance require that the applicant must show, among other things, the suitability of the property for the use desired; that the proposed special exception will not substantially injure or detract from the use of neighboring property or from the character of the neighborhood; and that it will serve the best interest of the township, the convenience of the community, and the public welfare.  Sections 182-210.B(3)(b), 182-602.C, and 182-728.E require for a special exception that the existing structure comply with certain bulk and area regulations.  Because substantial evidence existed that Sprint did not meet an enumerated requirement for the special exception, the court finds that the Board's decision to deny the special exception was supported by substantial evidence.

In its decision, the Board denied the special exception because it concluded that: the existing structure failed to comply with the necessary area and bulk requirements; the property was not suitable for the use desired;[11] the proposed special exception may substantially injure or detract from the use of the neighboring property or from the character of the neighborhood; and the proposed special exception did not serve the best interests of the township, the convenience of the community, or the public welfare.  Sprint asserts that the Board's findings that the proposed special exception will substantially injure or detract from the use of the neighboring property or from the character of the neighborhood and that the proposed special exception does not serve the best interests of the township, the convenience of the community, or the public welfare, were not supported by substantial evidence.

-------------------

[11] Sprint has not directly attacked the Board's finding that the property is not suitable for the use desired.  Sprint's failure to demonstrate that the Board's finding as to suitable use was not supported by substantial evidence would be sufficient to uphold the denial of the special exception.  Nevertheless, the court will consider Sprint's arguments as to other findings because the issues raised by them overlap with the finding as to suitable use.

The court thus far has found that the Board's decision to deny the variance was supported by substantial evidence, and it is undisputed that the Church property does not meet relevant area and bulk requirements.  Therefore, the Board's finding to this effect was supported by substantial evidence and is sufficient to uphold its decision to deny the special exception.

In addition, the court concludes that the Board's findings as to suitable use and the best interests of the township, the convenience of the community, or the public welfare, were supported by substantial evidence.  The Board based these two findings on evidence presented by Sprint's expert, Nocete.  He testified that, even if a special exception were granted, a second facility would still have to be constructed, and that alternative sites provided equal or, in the case of the Grange Field site, far superior coverage.  The Board concluded from this evidence that, even if the Church facility were approved, Sprint still would have to find and develop more sites to reach its coverage goals.

Substantial evidence supported the Board's finding that alternative sites – which were located in less populated, non-residential area, would provide better coverage, and potentially not necessitate the building of a second facility – would better serve the township and community and that the proposed facility was not the most suitable property for the use desired.[12]  Upon

_____

[12] Sprint argues that its proposed facility is in the public welfare and convenience of the community because Section 182-728.A requires that applicants "demonstrate that a good faith effort has been made to obtain permission to mount the antenna on an existing building or structure."  This requirement puts the burden of proof on the applicant.  Although Section 182-728.A may express a preference for placement of facilities on existing structures, it does not mandate that the Board automatically approve facilities on existing structures over new structures.  Nor is the requirement inconsistent with a Board's finding that a facility on a new structure, as opposed to an existing structure, would better comply with the standards, as well as the "spirit, purpose and intent," see § 182-1004.A(2)(a), of the Ordinance.  If anything, Sprint now may show that it has made a good faith effort to obtain permission to mount its antenna on an existing structure.

review of the totality of the record, the court concludes that the Board based its decision to deny

the special exception on evidence that a reasonable mind might accept as adequate to support that

conclusion.  See Ho-Ho-Kus, 197 F.3d at 71.

Finally, Sprint argues that the Board's finding that the proposed special exception will

substantially injure or detract from the use of the neighboring property or from the character of

the neighborhood was based on one resident's objections about aesthetics and was not sufficient

to support the denial.  See Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp., 181 F.3d

403, 407-09 (3d Cir. 1999) (finding that aesthetics can be a valid basis for local zoning decisions,

but that a "few generalized expressions of concern with 'aesthetics' cannot serve as substantial

evidence") (citing Oyster Bay, 166 F.3d at 496; H.R. Rep. 104-204, at 94-95 (1995), reprinted in

1996 U.S.C.C.A.N. 10, 61).  The court declines to rule on this issue, which is no longer

determinative, inasmuch as the court has found that the Board's other reasons given in denying

the special exception were supported by substantial evidence.

**C.     The Board's Decision Does Not Have the Effect of Prohibiting the Provision of
        Personal Wireless Service and Does Not Violate the TCA.**

For an alleged violation of Section 332(c)(7)(B)(i)(II), the Third Circuit has held that the

provider has the burden to meet a two-part test to show whether there was a "prohibitive effect."

Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. Easttown Twp., 331 F.3d 386, 397-98

(3d Cir. 2003) (citing APT Pittsburgh, 196 F.3d at 480-81); Nextel West Corp. v. Unity Twp.,

282 F.3d 257, 265-66 (3d Cir. 2002).  First, "the provider must show that its facility will fill an

existing significant gap . . . in the service available to remote users."  Omnipoint Commc'ns, 331

F.3d at 397-98 (quoting <u>APT Pittsburgh</u>, 196 F.3d at 480); <u>Nextel West</u>, 282 F.3d at 265.  For

this, the provider must show "that the area the new facility will serve is not already served by

another provider." <u>Omnipoint Commc'ns</u>, 331 F.3d at 398 (quoting <u>APT Pittsburgh</u>, 196 F.3d at

480); <u>Nextel West</u>, 282 F.3d at 265.  This first prong requires "a gap from a *user's* perspective,

rather than a *particular provider's* perspective." <u>Omnipoint Commc'ns</u>, 331 F.3d at 399

(quoting <u>Nextel West</u>, 282 F.3d at 265).

     Second, the provider must show that "the manner in which it proposes to fill the

significant gap in service is the least intrusive on the values that the denial is sought to serve."

<u>Id.</u> at 398 (quoting <u>APT Pittsburgh</u>, 196 F.3d at 480); <u>Nextel West</u>, 282 F.3d at 266.  This second

prong requires "a showing that a good faith effort has been made to identify and evaluate less

intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system

designs, alternative tower designs, placement of antennae on existing structures, etc." <u>Omnipoint</u>

<u>Commc'ns</u>, 331 F.3d at 398 (quoting <u>APT Pittsburgh</u>, 196 F.3d at 480); <u>see</u> <u>Nextel West</u>, 282

F.3d at 266.  As explained above, the court applies a <u>de novo</u> standard of review to the "effect of

prohibiting" inquiry, and not the substantial evidence standard of review.  <u>APT Pittsburgh</u>, 196

F.3d at 475.

     **1.**     **Sprint Failed to Show a Significant Gap in Service.**

     In its application to the Board and arguments presented in support of summary judgment,

Sprint alleges that the construction of the facility on the Church would allow it to fill a

significant gap in its communications coverage within the Haverford Township area.  Sprint

presented a map purporting to show the gap in service in the area.  (Def. Ex. A-7 (Map of

Predicted Coverage without Proposed Site)).   Sprint has not presented any evidence, however, that the area to be served by the proposed facility is not already being served by another provider. See Omnipoint Commc'ns, 331 F.3d at 398.

Also, Sprint has not established that a significant gap existed from the user's perspective. See Omnipoint Commc'ns, 331 F.3d at 399.  The Board argues that two residents testified that they already had full coverage on their Sprint PCS phones in the affected area. (See Bd. Decision & Order ¶¶ 46-47.)  The experiences of two residents may not portray accurately the level of Sprint's personal communications services in the subject area.  The residents' unrebutted testimony, however, does undermine Sprint's assertion that a Sprint PCS user could not make or receive mobile telephone connections in the subject area.  (Id. at ¶¶ 12, 27.)

Because Sprint has not presented evidence that the area to be served by the proposed facility is not already being served by another provider, or that Sprint users were not experiencing coverage in the area, Sprint has failed to meet its burden to show its proposed facility will fill an existing significant gap in service available to remote users.  See id. at 397-98.

### 2.      Sprint Failed to Show the Facility Was the Least Intrusive Means.

Even if Sprint had shown that a significant gap existed, it failed to meet its burden to show that the proposed facility is the least intrusive means of filling any significant gap in personal communications services.  Sprint asserts that the proposed facility on the existing structure of the Church is a most reasonable alternative to its constructing a new, intrusive, and more imposing 170- or 250-foot tall free-standing communications tower.  Sprint also argues that the Board and the citizens did not present evidence of the actual availability of alternative sites,

19

of the feasibility of obtaining the required zoning relief for alternative sites, or that these sites are better alternatives to the proposed facility.

Sprint ignores that it is Sprint's burden, and not the Board or the citizens' burden, to show that its proposed facility is the least intrusive alternative.  See Omnipoint Commc'ns, 331 F.3d at 397-98.  Sprint must show that it has made a good faith effort to identify and evaluate less intrusive alternative sites.  See id. at 398.  It is therefore Sprint's burden to show that the alternative sites are not actually available, not feasible, and are not better alternatives to the proposed facility.

Sprint has not demonstrated that the Church site is the least intrusive on the values of the community – values that the denial sought to protect.  See id.  Sprint did not consider any other existing structures as potential sites and did not thoroughly investigate raw land sites.

The record shows that alternative raw land sites would provide equal or better coverage for the community than the proposed facility, without necessarily requiring the construction of a second tower.  Sprint's expert Nocete testified that, even if the Church facility were constructed, a second facility would have to be built in the township due to the limited coverage the Church facility would achieve.  He testified that a tower at Grange Field would provide better coverage than the proposed facility at the Church site.[13]  It follows that a facility with greater coverage than the Church site might reduce or eliminate the need for a second tower.  Nocete also testified that a Karakung Drive site could provide the same coverage as the proposed site.

There is evidence that one resident objected to the proposed facility because of aesthetics

---

[13] He did not know the height that a tower at Grange Field would have to be in order to equal the anticipated coverage from the proposed facility.

and because alternatives located in non-residential areas would provide more coverage than the proposed site.  The Board also faced the possibility that the approval of the facility might pave the way for even higher antennas to be installed by other providers on top of the Church.  At oral argument, counsel for the Board advanced the prospect that if Sprint were allowed to place its facility atop the Church other communications carriers also could claim the right to add their facilities alongside Sprint's.  Any subsequent antenna would have to be ten feet higher than an existing antenna.  Sprint countered that this concern was speculative as each carrier would have to seek and obtain permission from the Board to install its antenna.  The Board's argument, however, cannot be ignored because, if allowance of the special exception to Sprint was rational, then denial of Sprint's competitor's applications would likely be seen as irrational and intended to give Sprint preferential treatment.  The Board's concern about additional, higher antennas atop the Church goes to considerations of aesthetics and preserving the character and values of the community.  The court finds that this is a legitimate concern that could come within the orbit of substantial reasons for denial of Sprint's application.

Based on this evidence, the court finds support for the Board's determination that the proposed site was not the least intrusive because the values of the community would be better served by placing the wireless communications facility in a non-residential, less populated area where superior coverage could be achieved.  The Board acted within its authority in determining that, for instance, a 170-foot tall tower, with better coverage, in an isolated field would be less intrusive than a bare, twelve-foot high antenna pole, providing less than comprehensive coverage, on top of a church in a residential neighborhood.

In failing to show that less intrusive alternative sites, such as Grange Field, were not

21

available or feasible, Sprint has not demonstrated a good faith effort to identify and evaluate these sites.  See id.  It has not met its burden to show that a significant gap in personal communications services existed and that the proposed facility was the least intrusive means to fill that gap.  The court therefore concludes that the Board's decision did not have the effect of prohibiting the provision of personal wireless services and did not violate the TCA.


**D.      The Board's Decision Was Not Arbitrary and Capricious.**

Sprint avers that the Board's decision is arbitrary, capricious, unreasonable, and an abuse of discretion in contravention of Pennsylvania law.  It has not presented arguments or evidence as to what Pennsylvania law was violated and how.  It has incorporated its arguments regarding violations of the TCA as support for its claim that the decision was arbitrary and capricious.  The court has determined that the Board's decision was supported by substantial evidence, did not have the effect of prohibiting the provision of personal communications services, and therefore did not violate the TCA.  Because no additional arguments or evidence have been presented to support this claim, the court finds that Sprint has not met its burden on its summary judgment motion to make a sufficient showing that the Board's decision was arbitrary and capricious.


**V.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.  An appropriate Order follows.